**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| QUAMIIR TRICE, | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION |
| | : | No. 2:26-cv-8541 |
| COMMUNITY COLLEGE OF PHILADELPHIA | : | |
| and | : | **COMPLAINT** |
| CORY DULANEY (a/k/a COREY M. DULANEY), | : | **JURY TRIAL DEMANDED** |
| Defendants. | : | |

## COMPLAINT

Plaintiff Quamiir Trice, by and through his undersigned counsel, brings this Complaint against Defendants Community College of Philadelphia and Cory Dulaney and, in support thereof, avers as follows:

### I. PRELIMINARY STATEMENT

1. Plaintiff Quamiir Trice ("Mr. Trice" or "Plaintiff") is a Black, African American, practicing Muslim man who came up through the Center for Male Engagement ("CME") at Defendant Community College of Philadelphia ("CCP" or the "College") as a student and returned to serve it as a full-time Support Coach. He brings this action for discrimination on the basis of religion, race, and color; failure to accommodate his religious practice; religious hostile work environment; and retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), and the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq. ("PHRA").

2. Over a period of years, Mr. Trice's supervisor, Defendant Cory Dulaney ("Dulaney"), mocked Mr. Trice's beard, told him it was "not time" for him to pray, refused his request to complete his prayer before a meeting, and dismissed him in front of students and staff with the words, "You better go pray." When Mr. Trice told Dulaney he needed to pray, Dulaney threatened him with discipline. Soon afterward, Mr. Trice was placed on a written warning and a Performance Improvement Plan.

3. Mr. Trice reported Dulaney's conduct to College leadership — including, on April 23, 2025, directly to CCP Vice President Dr. David Thomas, who told Mr. Trice not to mention it to anyone else because it would make Dulaney look bad. On June 5, 2025, Mr. Trice submitted a formal written complaint to Human Resources requesting an investigation and protection from retaliation. CCP removed him from the workplace that same day. Twenty-six days later, on July 1, 2025, CCP fired him, by a letter signed by Dulaney — the very supervisor about whom he had complained.

## II. PARTIES

4. Plaintiff Quamiir Trice is an adult individual who resides in Philadelphia, Pennsylvania. Mr. Trice is Black and African American, and he is a practicing Muslim.

5. Defendant Community College of Philadelphia Foundation dba Community College of Philadelphia ("CCP" or the "College"), is a public community college and nonprofit corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business at 1700 Spring Garden Street, Philadelphia, Pennsylvania 19130. Defendant CCP has a registered agent wit the Pennsylvania Department of State at URS Agents, LLC, in Dauphin County, 125 Locust Street, Harrisburg, PA 17101.

6. At all relevant times, CCP employed well in excess of fifteen employees — upon information and belief, more than 500 employees — for each working day in each of twenty or

more calendar weeks in the current or preceding calendar year, and was an "employer" within the meaning of 42 U.S.C. § 2000e(b) and the PHRA, 43 P.S. § 954(b).

1. Defendant Cory Dulaney, whose name also appears in College records as "Corey M. Dulaney," is an adult individual who, upon information and belief, resides in Philadelphia, Pennsylvania. At all relevant times, Dulaney was employed by CCP in the CME, first as Assistant Director and Lead Support Coach and later as Director of the CME. On information and belief, Cory Dulaney resides at 1752 Church Lane, Philadelphia, PA 19141.

2. At all times relevant to the events of 2025 described below, Dulaney was Mr. Trice's supervisor, with authority to direct his work, to issue discipline, to place him on a Performance Improvement Plan, and to recommend and effect the termination of his employment. Dulaney signed the letter terminating Mr. Trice's employment. Dulaney is sued in his individual capacity under the PHRA.

3. At all relevant times, CCP acted by and through its agents, servants, and employees, including Dulaney, each of whom acted within the course and scope of his or her employment and in furtherance of CCP's business.

## III. JURISDICTION AND VENUE

4. This Court has original subject-matter jurisdiction over Plaintiff's Title VII claims pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3), because those claims arise under the laws of the United States.

5. This Court has supplemental jurisdiction over Plaintiff's PHRA claims pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the Title VII claims that they form part of the same case or controversy under Article III of the United States Constitution.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) and 42 U.S.C. § 2000e-5(f)(3), because Defendants reside in this District, the unlawful employment

practices alleged herein were committed in this District, the employment records relevant to those practices are maintained and administered in this District, and Plaintiff would have continued working in this District but for the unlawful employment practices alleged herein.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. On or about July 28, 2025, Mr. Trice filed a verified Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dual-filed with the Pennsylvania Human Relations Commission ("PHRC") and docketed as EEOC Charge No. 530-2025-08609 (the "Charge").

8. The Charge alleged discrimination on the basis of race, color, and religion; harassment and a hostile work environment; disparate treatment and disparate scrutiny; retaliation; and the termination of Mr. Trice's employment. The Charge named both CCP and Dulaney.

9. The Charge was filed within 180 days of the April 2025 written warning and Performance Improvement Plan, the June 5, 2025 removal of Mr. Trice from the workplace, and the July 1, 2025 termination of his employment, and it described a continuing course of harassment that persisted through the date of his termination. CCP submitted a Position Statement to the EEOC dated January 9, 2026. Mr. Trice, through counsel, submitted a rebuttal dated January 14, 2026.

10. On October 2, 2026, the EEOC issued Mr. Trice a Notice of Right to Sue with respect to the Charge. This action is filed within ninety (90) days of Mr. Trice's receipt of that Notice.

11. More than one year has elapsed since the Charge was dual-filed with the PHRC. Mr. Trice has therefore exhausted his administrative remedies under the PHRA and is entitled to bring his PHRA claims in this Court. 43 P.S. § 962(c).

12. Mr. Trice has satisfied all conditions precedent to the filing of this action.

## V. FACTUAL ALLEGATIONS

### A. Mr. Trice's Long Relationship with CCP and the Center for Male Engagement.

13. Mr. Trice is an alumnus of CCP. Beginning in or about 2011, he participated in the CME as a student. During that time Mr. Trice received a letter of recommendation and in 2019 the CME featured Mr. Trice in a Black History Month profile as a program success story.

14. By letter dated February 2, 2022, CCP hired Mr. Trice as a full-time Administrative Support Coach in the CME, effective February 7, 2022, at an annualized salary of $44,000.

15. Mr. Trice's employment contract provided, in addition to salary, a package of employee benefits that included medical and dental coverage, life insurance, retirement contributions, disability coverage, vacation days, and personal days.

16. As a Support Coach, Mr. Trice served as an advocate for CME students, provided individualized coaching and support, connected students to College resources, and planned and supported CME programming, including student travel, community-service projects, and student recruitment.

17. When Mr. Trice was hired, Dr. Derrick Perkins directed the CME, and Dulaney served as its Assistant Director and Lead Support Coach.

18. On information and belief, Dulaney was appointed Director of the CME in 2024 or officially became Director in or about February 2025.

19. At all times relevant thereafter, Dulaney was Mr. Trice's supervisor.

### B. Mr. Trice's Religious Practice and Defendants' Knowledge of It.

20. Mr. Trice is a practicing Muslim and his sincerely held religious beliefs require him to perform obligatory prayers at prescribed times throughout the day, including times that fall within the workday, and to attend congregational Jumu'ah prayer on Fridays.

21. The prescribed prayer times are fixed by the position of the sun and therefore shift over the course of the year.

22. Mr. Trice also wears a beard as an expression of his religious faith.

23. Mr. Trice's faith was well known at the College. In February 2025, he was listed as an advisor to CCP's Muslim Student Association.

24. Dulaney knew that Mr. Trice prayed during the workday. In a 2023 text-message exchange, when Mr. Trice told Dulaney that he was about to pray, Dulaney referred to "the prayer time that I work around" and sent Mr. Trice a screenshot of prayer times.

25. Mr. Trice and Dulaney never discussed or agreed upon any fixed prayer schedule.

### C. Dulaney's Religiously Hostile Conduct Toward Mr. Trice.

26. Before Dulaney became Director, he made negative and insensitive comments about Mr. Trice's religious beard.

27. Mr. Trice complained to Dr. Perkins about Dulaney's comments regarding his beard. Dr. Perkins convened a meeting, but, upon information and belief, no corrective action was taken against Dulaney, and Dulaney's mistreatment of Mr. Trice continued.

28. At a CME summer retreat held at Kutztown University in or about 2023, Mr. Trice stepped away briefly to perform his obligatory prayer. Dulaney texted Mr. Trice asking where he was. When Mr. Trice responded that he was praying, Dulaney — who is not Muslim — replied, "it's not time for you to pray yet."

29. During a CME staff meeting, Dulaney made jokes about the gray hairs in Mr. Trice's beard. Mr. Trice, who had just received upsetting personal news, calmly told Dulaney that he was not in the mood for joking. Dulaney persisted, saying Mr. Trice was "too young" to have gray hair and continuing the jokes while other staff members laughed, until a colleague intervened and told Dulaney that his conduct was inappropriate.

30. Dulaney told Mr. Trice that he did not like him.

31. When Mr. Trice told Dulaney that his tone toward him was condescending, Dulaney responded that he would consider changing the way he spoke to Mr. Trice only if he could use the tone he uses with his toddler daughter.

### D. Dulaney Refuses Mr. Trice's Request to Pray, Threatens Discipline, and Mocks Him: "You Better Go Pray".

32. In or about February 2025, Dulaney decided to write Mr. Trice up. Dulaney sent Mr. Trice an email and, moments later, approached him in front of students and staff and asked whether he had read it.

33. Mr. Trice responded that he had just received the message and had not yet had an opportunity to review it. Rather than allowing Mr. Trice time to review it, Dulaney read the contents of the email aloud, in a visibly upset manner, in front of students and staff.

34. It was the prescribed time for Mr. Trice's obligatory prayer. Mr. Trice told Dulaney that he needed to pray and asked to meet privately with Dulaney immediately after he finished praying.

35. Dulaney refused Mr. Trice's request, insisted that the meeting take place immediately, and threatened to discipline Mr. Trice.

36. As Mr. Trice walked to retrieve his prayer rug, Dulaney said to him in the hallway, in a threatening tone, "You better go pray."

### E. The Written Warning and Performance Improvement Plan.

37. Soon after Mr. Trice told Dulaney that he needed to pray and Dulaney threatened him with discipline, CCP placed Mr. Trice on formal discipline.

38. According to Mr. Trice's termination letter, Mr. Trice received a 60-Day Written Warning on April 14, 2025, and was placed on a Performance Improvement Plan ("PIP") on April 15, 2025. CCP has since told the EEOC, inconsistently, that the PIP and 60-day written warning

were issued on April 5, 2025, and that the concerns reflected in them were first communicated on February 10, 2025.

39. Before the PIP, Dulaney did not provide Mr. Trice with formal warning or informal feedback about many of the concerns that Dulaney later listed in the PIP.

40. During one-on-one PIP meetings, Dulaney repeatedly departed from the meeting agenda and made comments implying that Mr. Trice's job was at risk if he did not "understand" things quickly enough.

41. Throughout the PIP period, Mr. Trice performed his job and documented his work in weekly PIP reports, including reports dated May 5, May 8, and May 14, 2025, that detailed his active projects, student travel, community-service planning, student recruitment, and next steps.

### F. Mr. Trice Reports Dulaney's Conduct to Vice President David Thomas.

42. On or about April 23, 2025, at approximately 11:00 a.m., Mr. Trice met with Dr. David Thomas, CCP's Vice President (SICE) in Dr. Thomas's office.

43. During that meeting, Mr. Trice complained about Dulaney's harassing, discriminatory, and disparate treatment of him and anything pertaining to Mr. Trice's praying.

44. Dr. Thomas responded that he would make sure everything was fine, and he instructed Mr. Trice not to mention the matter to anyone because it would make Dulaney look bad.

45. Upon information and belief, CCP did not investigate, document, or take any corrective action in response to Mr. Trice's April 23, 2025 complaint.

46. Dr. Thomas's instruction that Mr. Trice keep his complaint to himself discouraged Mr. Trice from pursuing his complaint through other channels and was contrary to any policy requiring CCP to investigate and remedy reports of discrimination and harassment.

**G. <u>Mr. Trice's Formal Complaint and His Immediate Removal from the Workplace.</u>**

47. CCP scheduled a meeting with Mr. Trice, Dulaney, and Human Resources for June 5, 2025, to review Mr. Trice's performance under the PIP.

48. On June 5, 2025, Mr. Trice submitted a formal written complaint addressed to CCP's Human Resources Department, Title IX Coordinator, and Employee Relations (the "June 5 Complaint"). The June 5 Complaint alleged workplace harassment, religious disrespect, and a hostile work environment by Dulaney; described, among other things, Dulaney's comments about Mr. Trice's beard, Dulaney's statement that it was "not time" for him to pray, and Dulaney's "You better go pray" remark; expressly requested a formal investigation; and expressly requested protection against retaliation.

49. Dulaney was present at the June 5, 2025 meeting at which Mr. Trice submitted the June 5 Complaint and therefore knew of it.

50. CCP immediately ended the meeting and removed Mr. Trice from the workplace, placing him on administrative leave pending an investigation. Mr. Trice was informed of his administrative leave by Human Resources representative Koi Stevens and did not receive a formal letter placing him on leave.

51. CCP has admitted to the EEOC that Dulaney "intended to terminate" Mr. Trice's employment at the June 5, 2025 meeting — six weeks after Mr. Trice reported Dulaney's religious remarks to Vice President Thomas, and before the 60-day period of the written warning issued on April 14, 2025 had expired.

52. Upon information and belief, before the decision to terminate Mr. Trice's employment was finalized, Dulaney and the other CCP personnel who participated in that decision

knew of Mr. Trice's complaints about Dulaney, including his April 23, 2025 report to Dr. Thomas and his June 5 Complaint.

53. On June 16, 2025, Mr. Trice participated in a confidential investigation interview organized by Koi Stevens, with Leila Lawrence also in attendance.

54. Mr. Trice was never informed of any outcome of the investigation before his employment was terminated.

### H. <u>CCP Terminates Mr. Trice's Employment.</u>

55. By letter dated July 1, 2025, signed by Dulaney as Director of the CME, CCP terminated Mr. Trice's employment effective that same day (the "Termination Letter").

56. The Termination Letter asserted that Mr. Trice's employment was being terminated for "unsatisfactory performance."

57. CCP terminated Mr. Trice's employment twenty-six days after he submitted the June 5 Complaint, fifteen days after he participated in CCP's investigation interview, and approximately ten weeks after he reported Dulaney's conduct to Vice President Thomas.

58. Upon information and belief, CCP replaced Mr. Trice with, or reassigned his duties to, an individual outside of his protected classes.

59. Upon information and belief, similarly situated CME employees outside of Mr. Trice's protected classes, who did not engage in protected activity, were not subjected to comparable scrutiny, discipline, or termination.

60. CCP's stated reason for terminating Mr. Trice — unsatisfactory performance — is false and a pretext for discrimination and retaliation. Among other things:

## I. <u>Mr. Trice's Damages.</u>

61. As a direct and proximate result of Defendants' unlawful conduct, Mr. Trice has lost, and will continue to lose, wages, salary increases, and employment benefits, including medical, dental, life-insurance, disability, and retirement benefits and paid leave.

62. Upon information and belief, as a CCP employee Mr. Trice was eligible for the College's employee tuition-remission benefit, which he expected to use toward his graduate degree at the University of Pennsylvania. As a result of his termination, Mr. Trice lost that benefit and has been forced to finance his graduate education through student loans.

63. As a further direct and proximate result of Defendants' unlawful conduct, Mr. Trice has suffered and continues to suffer emotional distress, humiliation, embarrassment, anxiety, damage to his professional reputation, and loss of enjoyment of life.

## VI. CAUSES OF ACTION

**COUNT ONE**
**TITLE VII — DISPARATE TREATMENT ON THE BASIS OF RELIGION, RACE, AND COLOR**
**42 U.S.C. § 2000e-2(a)**
**<u>(Plaintiff v. Defendant Community College of Philadelphia Foundation)</u>**

64. Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

65. Mr. Trice is a member of protected classes on the basis of his religion (Islam), his race (African American), and his color (Black).

66. Mr. Trice was qualified for his position as a CME Support Coach, a position he held from February 2022 until July 2025.

67. CCP subjected Mr. Trice to adverse employment actions, including disparate scrutiny, the April 2025 written warning and PIP, removal from the workplace, and the termination of his employment.

68. Mr. Trice's religion, race, and color were motivating and/or determinative factors in CCP's adverse employment actions against him, as evidenced by, among other things, Dulaney's religiously derogatory remarks and conduct, the temporal relationship between Mr. Trice's request to pray and the threat of discipline that preceded his PIP, CCP's more favorable treatment of employees outside his protected classes, and the pretextual nature of CCP's stated reasons.

69. By the foregoing conduct, CCP discriminated against Mr. Trice with respect to his compensation, terms, conditions, and privileges of employment, and discharged him, because of his religion, race, and color, in violation of 42 U.S.C. § 2000e-2(a)(1).

70. CCP acted intentionally and with reckless indifference to Mr. Trice's federally protected rights.

71. Alternatively, there is evidence to support mixed-motive discrimination.

72. As a direct and proximate result of CCP's unlawful conduct, Mr. Trice has suffered the damages described above.

**COUNT TWO**
**TITLE VII — RELIGIOUS DISCRIMINATION: FAILURE TO ACCOMMODATE**
**42 U.S.C. §§ 2000e(j), 2000e-2(a)**
**(Plaintiff v. Defendant Community College of Philadelphia Foundation)**

73. Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

74. Title VII defines "religion" to include all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that it is unable reasonably to accommodate an employee's religious observance or practice without undue hardship on the conduct of its business. 42 U.S.C. § 2000e(j).

75. Mr. Trice holds a sincere religious belief that requires him to perform obligatory prayers at prescribed times, including times that fall during the workday.

76. Mr. Trice informed CCP, through Dulaney, of the conflict between his religious practice and Dulaney's demands, including when he told Dulaney that he needed to pray and asked to meet after completing his prayer.

77. CCP, through Dulaney, refused to accommodate Mr. Trice's religious practice, threatened him with discipline because of it, ridiculed it, and thereafter disciplined him and terminated his employment.

78. Mr. Trice's religious practice, and his need for accommodation of that practice, was a motivating factor in CCP's decisions to discipline him and to terminate his employment.

79. Accommodating Mr. Trice's religious practice would not have resulted in substantial increased costs in relation to the conduct of CCP's business or otherwise imposed any undue hardship on CCP.

80. By the foregoing conduct, CCP violated 42 U.S.C. §§ 2000e(j) and 2000e-2(a).

81. As a direct and proximate result of CCP's unlawful conduct, Mr. Trice has suffered the damages described above.

**COUNT THREE**
**TITLE VII — HOSTILE WORK ENVIRONMENT ON THE BASIS OF RELIGION**
**42 U.S.C. § 2000e-2(a)**
**(Plaintiff v. Defendant Community College of Philadelphia Foundation)**

82. Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

83. Mr. Trice was subjected to intentional discrimination and harassment because of his religion, including Dulaney's comments about Mr. Trice's religious beard; Dulaney's mockery of the gray hair in that beard in front of colleagues; Dulaney's statement that it was "not time" for Mr. Trice to pray; Dulaney's refusal to permit Mr. Trice to complete his prayer before a meeting and his threat of discipline; Dulaney's public statement, "You better go pray"; Dulaney's

tokenizing reference to Muslims during a PIP meeting; and Dulaney's demeaning, infantilizing, and intimidating treatment of Mr. Trice.

84. The harassment was severe or pervasive. It extended over a period of years, was perpetrated by Mr. Trice's own supervisor, targeted the practice of his faith, occurred in front of students and colleagues, and culminated in tangible employment actions, including the PIP and the termination of his employment.

85. The harassment detrimentally affected Mr. Trice, leaving him publicly embarrassed, distressed, and on edge, and it would have detrimentally affected a reasonable person of the same religion in Mr. Trice's position.

86. CCP is liable for the hostile work environment because the harassment was perpetrated by Mr. Trice's supervisor and culminated in tangible employment actions, including his termination. CCP is further liable because it knew or should have known of the harassment — including through Mr. Trice's complaint to Dr. Perkins and his April 23, 2025 report to Vice President Thomas — and failed to take prompt and appropriate remedial action, and because its Vice President instructed Mr. Trice not to report the harassment to anyone else.

87. By the foregoing conduct, CCP violated 42 U.S.C. § 2000e-2(a)(1).

88. As a direct and proximate result of CCP's unlawful conduct, Mr. Trice has suffered the damages described above.

**COUNT FOUR**
**TITLE VII — RETALIATION**
**42 U.S.C. § 2000e-3(a)**
**(Plaintiff v. Defendant Community College of Philadelphia Foundation)**

89. Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

90. Mr. Trice engaged in activity protected by Title VII, including by (a) complaining to Dr. Perkins about Dulaney's comments regarding his religious beard; (b) reporting Dulaney's

religiously derogatory conduct, including the "better go pray" remark, to Vice President Thomas on April 23, 2025; (c) submitting the June 5 Complaint, which alleged religious harassment and a hostile work environment and requested protection from retaliation; (d) participating in CCP's investigation of the June 5 Complaint; and (e) opposing Dulaney's refusal to accommodate his religious practice.

91. CCP, including Dulaney, was aware of Mr. Trice's protected activity.

92. CCP subjected Mr. Trice to materially adverse actions that would dissuade a reasonable employee from making or supporting a charge of discrimination, including removing him from the workplace on the day he submitted the June 5 Complaint and terminating his employment twenty-six days later.

93. There is a causal connection between Mr. Trice's protected activity and CCP's adverse actions, as evidenced by, among other things, the unusually suggestive temporal proximity between them; Dulaney's intention to terminate Mr. Trice shortly after his report to Vice President Thomas and before the 60-day warning period had run; Vice President Thomas's instruction that Mr. Trice not repeat his complaint because it would make Dulaney look bad; CCP's decision to allow Dulaney, the subject of the complaint, to effectuate the termination; and CCP's shifting and inconsistent explanations for its decision.

94. But for Mr. Trice's protected activity, CCP would not have terminated his employment.

95. By the foregoing conduct, CCP violated 42 U.S.C. § 2000e-3(a).

96. Alternatively, there is evidence to support mixed-motive discrimination.

97. As a direct and proximate result of CCP's unlawful conduct, Mr. Trice has suffered the damages described above.

**COUNT FIVE**
**PHRA — DISCRIMINATION, FAILURE TO ACCOMMODATE, AND HOSTILE WORK ENVIRONMENT**
**43 P.S. § 955(a)**
**(Plaintiff v. Defendant Community College of Philadelphia Foundation)**

98. Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

99. The PHRA prohibits an employer from discharging or otherwise discriminating against an employee with respect to compensation, hire, tenure, terms, conditions, or privileges of employment because of the employee's race, color, or religious creed. 43 P.S. § 955(a).

100. For the reasons set forth in Counts I through III, CCP discriminated against Mr. Trice because of his religious creed, race, and color; failed to accommodate his religious practice; subjected him to a hostile work environment because of his religious creed; and discharged him, in violation of 43 P.S. § 955(a).

101. As a direct and proximate result of CCP's unlawful conduct, Mr. Trice has suffered the damages described above.

**COUNT SIX**
**PHRA — RETALIATION**
**43 P.S. § 955(d)**
**(Plaintiff v. Defendant Community College of Philadelphia Foundation)**

102. Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

103. The PHRA prohibits discrimination against any individual because that individual has opposed any practice forbidden by the PHRA or has made a charge, testified, or assisted in any manner in any investigation, proceeding, or hearing under the PHRA. 43 P.S. § 955(d).

104. For the reasons set forth in Count IV, CCP retaliated against Mr. Trice because he opposed practices forbidden by the PHRA, in violation of 43 P.S. § 955(d).

105. As a direct and proximate result of CCP's unlawful conduct, Mr. Trice has suffered the damages described above.

**COUNT SEVEN**
**PHRA — AIDING AND ABETTING**
**43 P.S. § 955(e)**
**(Plaintiff v. Defendant Cory Dulaney)**

106. Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

107. The PHRA makes it an unlawful discriminatory practice for any person or employee to aid, abet, incite, compel, or coerce the doing of any act declared to be an unlawful discriminatory practice under the PHRA. 43 P.S. § 955(e).

108. At all relevant times, Dulaney was Mr. Trice's supervisor.

109. Dulaney aided, abetted, incited, compelled, and coerced the unlawful discriminatory practices described above through his own direct acts of discrimination, harassment, and retaliation, including by ridiculing Mr. Trice's religious beard, interfering with and mocking his prayer, refusing to accommodate his religious practice and threatening him with discipline for it, initiating the PIP, intending to terminate him after he reported Dulaney's conduct, and signing and effectuating the termination of his employment after Mr. Trice complained of religious harassment.

110. By the foregoing conduct, Dulaney violated 43 P.S. § 955(e).

111. As a direct and proximate result of Dulaney's unlawful conduct, Mr. Trice has suffered the damages described above.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Quamiir Trice respectfully requests that this Court enter judgment in his favor and against Defendants Community College of Philadelphia and Cory Dulaney, and grant the following relief:

A. A declaration that Defendants' conduct violated Title VII and the PHRA;

B. An order directing CCP to reinstate Mr. Trice to his former position, or a substantially equivalent position, with full seniority and benefits, or, in lieu of reinstatement, an award of front pay and lost future benefits;

C. An award of back pay and the value of lost employment benefits, including lost tuition-remission benefits and associated borrowing costs, with prejudgment interest;

D. An award of compensatory damages for emotional distress, humiliation, reputational harm, and other non-economic and consequential losses, as permitted by law;

E. An order directing CCP to expunge from Mr. Trice's personnel file the April 2025 written warning, the PIP, and all references to his termination, and to provide a neutral reference;

F. An award of an amount sufficient to offset any adverse tax consequences of a lump-sum award;

G. An award of reasonable attorneys' fees, expert fees, and costs, including pursuant to 42 U.S.C. § 2000e-5(k) and the PHRA;

H. Pre-judgment and post-judgment interest; and

I. Such other and further relief as the Court deems just and proper.

## VIII. DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

**DEREK SMITH LAW GROUP, PLLC**

By: /s/ *Christopher J. DelGaizo, Esquire*
CHRISTOPHER J. DELGAIZO, Esquire
*Attorney I.D. No. 200594*

1628 Pine Street
Philadelphia, PA 19103
Tel: (215) 391-4790
Fax: (215) 501-5911
Email: Chris@dereksmithlaw.com
*Attorneys for Plaintiff, Quamiir Trice*

Dated: November 9, 2026